BRADFORD, *Appellant*, v. FLOYD.

1. **Instructions**: HARMLESS ERROR. This court will not reverse for an error in the phraseology of a single instruction, when it is manifest, taking it in connection with the issues made in the pleadings and all the other instructions, that the jury could not have been misled.

2. **Texas Cattle**: JUDICIAL NOTICE. The courts will not take judicial notice of the supposed fact that during a particular season of the year what are known as Texas cattle have some contagious or infectious disease, communicable to native cattle by contact. If this be a fact, it must be made the subject of proof.

3. **Cattle Running at Large**: DAMAGES. At common law it was the duty of every man to keep his cattle within his own inclosure. Failing to do so, he was liable for their trespasses upon the lands of others; and for any injury resulting from disease communicated by them, without regard to the question whether he was personally at fault, he was as much bound as if he had voluntarily permitted them to go at large. But in this State, in the absence of special stock laws, the common range is regarded as common property for the purposes of herding. The owner is not liable in damages for trespasses committed upon his neighbor's premises, except by breaking his lawful inclosure.

4. ——: COMMUNICATING DISEASE: DAMAGES. Before the owner of cattle running at large in this State, can be held liable for damages caused by disease communicated by them to other cattle, it must be shown that he knew his cattle were diseased; and this rule applies as well to Texas as to native stock.

*Appeal from Jasper Circuit Court.*—HON. JOSEPH CRAVENS, Judge.

AFFIRMED.

> *Smith & Krauthoff* with *A. L. Thomas* for appellant.
>
> *Phelps & Brown* for respondent.

PHILIPS, C.—This is an action for damages occasioned to plaintiff's cattle by contact with what are known as Texas cattle. The petition alleged substantially that in July, 1879, the defendant was the owner, etc., of a large

number of Texas, Mexican and Indian cattle, diseased and distempered with what is known as Texas or Spanish fever or some other infectious disease, and that defendant wrongfully and negligently failed and refused to restrain them, but negligently suffered them to go at large, off his land, upon the commons, where plaintiff's cattle ranged, and mingled with them, whereby nine head of plaintiff's cattle became infected with said disease and died, to his damage, etc. The answer was a general denial.

Plaintiff's evidence tended to show that defendant had about eighty head of cattle—one-third Texas and the rest Arkansas cattle; that in the summer of 1879 he suffered them to run on the common, where they mingled with plaintiff's cattle; that defendant's said cattle were infected with some contagious disease which was communicated to plaintiff's cattle, and nine of them died in the month of July. The defendant's evidence tended to prove that only nine of defendant's cattle were Texas cattle, and that they were sound and healthy when placed upon and taken off the range, and that the disease of which plaintiff's cattle died was not communicated by defendant's cattle.

On the part of plaintiff, the court instructed the jury that if they found from the evidence that the defendant was the owner of any diseased cattle, and suffered them to go at large, off his own land, upon the range, with the cattle of plaintiff, whereby plaintiff's cattle became diseased, they should find for the plaintiff; also, that the presence of Texas or Spanish fever among the native cattle of plaintiff, on the range with cattle of defendant, was *prima facie* evidence that the cattle of defendant were affected with Texas or Spanish fever. The plaintiff asked no other instructions.

At the request of the defendant, the court gave the following instructions:

1. The burden of proof is upon the plaintiff, and unless he has satisfied the jury that the cattle of defendant were affected with a contagious disease, which was ·com-

municated to the cattle of plaintiff, they will find for defendant.

2.   Unless the jury find from the testimony that defendant's cattle had some contagious or infectious disease at the time they were placed upon the range, and also that it was communicated to the cattle of plaintiff, they will find for defendant.

The court, of its own motion, and over the objections of the plaintiff, gave the following instruction:  " Plaintiff can only recover damages for injuries to such of his cattle as the evidence shows were injured or died from infectious disease contracted from defendant's cattle, while defendant's cattle were off the land where they belonged, unless the jury believe that the defendant's cattle were diseased Texas cattle, and as such communicated the disease to plaintiff's cattle, of which they died or were injured."

The jury found the issues for the defendant, and the plaintiff has appealed.

The giving of the second instruction on behalf of the defendant, is chiefly complained of by appellant.   Had the

1. INSTRUCTIONS: harmless error.

plaintiff otherwise shown a good cause of action in his petition and proofs, and no other instruction been given in the case, the second instruction aforesaid might have been objectionable as perhaps limiting the plaintiff's right of recovery to proof that the cattle were diseased at the time they were turned on the range. But taken in connection with the issues made in the pleadings and all the instructions given, it is manifest that the jury could not have been misled by it.   And in such case this court will not reverse for an error in the phraseology of a single instruction.   *Nelson v. Foster*, 66 Mo. 381; *Blewett v. Railway Co.*, 72 Mo. 583.

The argument of appellant throughout is based on the assumption that the courts, even in the form of action

2. TEXAS CATTLE: ju-dicial notice.

adopted by the petition, will take judicial cognizance of the fact that during the season of the year when the defendant's cattle were upon the

commons they possessed some contagious or infectious disease communicable to native cattle coming in contact with them ; and, therefore, the defendant is liable for any injury resulting from such contagion, no matter whether he knew the particular cattle in question were so diseased or not. We know of no such established rule of law in respect of the so-called Texas or any other cattle. If we were to indulge in observations made *in pais*, or testimony delivered at *nisi* trials, or recur to current history and the reports of the national bureau of agriculture, it would be apparent that there is scarcely any subject about which there is such a diversity of opinion among practical cattle-men and scientists as that pertaining to the cause and character of the so-called Texas or Spanish fever in cattle, and especially as to its contagious and infectious properties, and the conditions under which native cattle will take it. Much seems to depend upon climatic influences, the seasons of the year and even the character of the particular season during which the disorder is supposed to be most infectious or contagious. The legislation of this State, based on the results of observation, indicates that in the opinion of the legislature such cattle, when brought into the State at certain seasons of the year, and after exposure for a time to our climate and food, lose the dangerous property of the disease. Whether such be the case or not, or whether and when the native exposed to the Texas cattle are liable to be affected, are in law disputable facts to be proved on the trial, as much so as any other issue tendered by the petition. This has been expressly so declared by the supreme court of Illinois, whose legislature and courts have had to deal with this matter practically. The act of her legislature assumed that Texas cattle, although free from disease, do communicate disease to native cattle. It was held that it was not a legal presumption that this theory was true. It is a question of fact to be determined by the jury. The act, say the court, makes the owner of Texas cattle liable for any damage resulting from disease communicated by them, but it does

not require a jury to believe without evidence, or that it is a recognized scientific fact that the disease is so communicated. *Davis v. Walker*, 60 Ill. 452.

By the common law it was made the duty of every man to restrain his cattle within the limits of his own inclosure. Failing to do so, he was liable for their trespasses upon the lands of others; and for any injury resulting from disease communicated by them, without regard to the question whether he was personally at fault, he was as much bound as if he had voluntarily permitted them to go at large. Cooley on Torts, 337. But in this State, in the absence of special stock laws, the common range is regarded as the common property for purposes of herding. The owner is not liable for damages for trespasses committed upon his neighbor's premises, except by breaking through his lawful inclosure. *Gorman v. Pacific R. R. Co.*, 26 Mo. 445.

*8. CATTLE RUNNING AT LARGE: damages* [margin note]

The Supreme Court of the United States in *Railroad Co. v. Husen*, 95 U. S. 465, followed by our Supreme Court in *Gilmore v. Railroad Co.*, 67 Mo. 323, and *Urton v. Sherlock*, 75 Mo. 247, having declared the acts of our legislature of 1871 and 1872 to be in conflict with the constitution of the United States, the only legislative act of the State applicable to the pleadings in this case, in force at the time of the injury in question, was section 6, chapter 6, page 135, Wagner's Statutes, as follows : " Every person shall so restrain his diseased or distempered cattle, or such as are under his care, that they may not go at large off the land to which they belong ; and no person shall willfully and knowingly drive any diseased or distempered cattle, affected with what is known as Texas or Spanish fever or any other infectious disease, into or through this State, or from one part thereof to another, unless it be to remove them from one piece of ground to another of the same owner. Any person offending against this statute in either respect shall, on conviction thereof, forfeit $20 for every head of such cattle and be liable for

*4. ——: communicating disease: damages.* [margin note]

all damages." From which it is apparent that it is only "diseased or distempered cattle" the owner or custodian is required to restrain and made liable for injury communicated by them.

The contention of appellant's counsel is, that Texas cattle are to be regarded and treated by the courts as vicious or dangerous animals, and the owner held liable for all damages done by them, whether or not the owner knew they were diseased, etc. As to domestic animals the common law does not affix any liability to the owner for damages inflicted by them when at large, on the ground of negligence, without proof that he knew the animal was mischievous or dangerous. *Vrooman v. Lawyer*, 13 John. 339; *Dearth v. Baker*, 22 Wis. 73; Cooley on Torts, 341, 343. The *scienter* should be averred and proved by the complainant. It is only in respect of animals *ferae naturae*, possessing certain universally recognized propensities, that the rule contended for by plaintiff applies. *Canefox v. Crenshaw*, 24 Mo. 199, 202. The section of the statute herein quoted in no wise altered the common law rule as to the *scienter*. Any other construction would be harsh and unreasonable. The section applies to any diseased cattle, native as well as Texas. And, therefore, the averments and proofs should be the same as to Texas cattle as to the native.

It is quite obvious also, from the clause of said section respecting the driving of Texas cattle into or through the State, to subject the party to an action for damages he should know of the diseased condition of the cattle; for it says: "No person shall willfully and knowingly drive any diseased or distempered cattle," etc. It is not averred in the petition, nor proved at the trial, that the defendant had any knowledge whatever of the diseased condition of the cattle, if they were diseased.

The judgment was for the right party, and the same is affirmed. All concur.

NORTON, J., concurs in the result.