M. E. PATEE v. N. A. ADAMS.

1. SPANISH FEVER; *Damages; Defendant's Knowledge to be Proved.* In an action brought against a person who drives or causes to be driven into any county of this state any cattle having the disease known as Texas, splenic or Spanish fever, to recover damages which arose from the communication of that disease from the cattle so driven, it is essential for the plaintiff to allege and prove that the defendant knew or had reason to know, that the cattle so driven were diseased with the fever, or were liable to communicate the disease to the domestic cattle of the state.

2. ———— *Contributory Negligence.* In such an action, the contributory negligence of the plaintiff is a competent defense.

*Error from Shawnee District Court.*

M. E. PATEE filed a petition in the district court, and alleged substantially that on the 1st day of June, 1884, she was the owner of twelve head of domestic cattle in the county of Riley, of the value of $1,200; that the defendant, *N. A. Adams,* on or about the day mentioned, unlawfully drove into the county of Riley two hundred head of diseased Texas or southern cattle, being cattle from the country south of the state of Kansas; that the last-named cattle were diseased with Texas, splenic or Spanish fever, and were driven or caused to be driven into Riley county from outside the state by the defendant, between the 1st day of March, 1884, and the 1st day of November, 1884; that by reason of such driving and the holding of said cattle in Riley county by defendant, Texas, splenic or Spanish fever was communicated to twelve head of the plain-

tiff's domestic cattle, which caused said twelve head to become sick and die, and that the plaintiff was thereby damaged in the sum of $1,200. The defendant demurred to the petition because it did not state that the defendant knew, or had reason to know, that the cattle alleged to have been driven were diseased with the fever mentioned in the petition. The demurrer was sustained by the court, and the plaintiff excepted to the ruling thereon, and subsequently amended her petition by adding the allegation respecting the knowledge of the defendant which was held by the court to be necessary. The defendant then answered by a denial of all the averments of the petition, and alleged that about the time stated in plaintiff's petition he purchased and shipped to Manhattan, Kansas, several car-loads of cattle, a portion of which were discharged at Manhattan into the stock yards of the Union Pacific Railway Company, and before they were all unloaded, but still in the possession of the railway company, the sheriff of Riley county seized the cattle and took and forcibly held the possession of the cattle for a long period of time, during which time the defendant Adams had no authority or control over the cattle; that the sheriff established an inclosure near the Kansas river and turned the cattle therein; that the inclosure was surrounded by a strong and durable fence provided with gates for gaining entrance thereto, and that the sheriff put the cattle under the authority of his deputy, who guarded the same day and night, and refused to permit the defendant Adams, or any other person, to assume control over them; and that the plaintiff carelessly, unlawfully and negligently opened the gates into the inclosure and turned her domestic cattle therein, and that if any disease was contracted by said cattle it was the result of her own carelessness and negligence.

Trial at the October Term, 1885. The court refused to instruct the jury that the defendant was liable, regardless of whether he knew or had reason to know that the cattle which he had purchased and shipped were diseased. Upon this question the court charged the jury as follows:

"If you believe from the evidence that the defendant, Ad-

ams, brought or caused to be brought into the county of Riley, state of Kansas, Texas cattle, or cattle liable to communicate Texas, Spanish or splenic fever to the domestic cattle of this state, and that said cattle came from the country south of this state between the 1st day of March, 1884, and the 1st day of November, 1884, and that defendant knew or had reason to know, or could by ordinary diligence have known, that said cattle were diseased cattle, or were cattle liable to communicate Texas, Spanish or splenic fever to the domestic cattle of this state; or if the defendant knew, or could with ordinary diligence have known, that such cattle were diseased with such disease, and were liable to communicate it to the domestic cattle of this state, and such cattle so brought or caused to be brought into said Riley county, communicated such disease to the domestic cattle of the plaintiff, and thereby plaintiff's cattle died, you will find for the plaintiff, and the value of such cattle as she lost as shown by the evidence."

In another instruction the court said:

"If you find from the evidence that the defendant, Adams, purchased the cattle described in the petition in good faith, in Kansas City, this state, without any knowledge that said cattle were infected with Texas, splenic or Spanish fever, and that he had no reason to know or believe that such cattle could or would communicate to the cattle of this state Texas, splenic or Spanish fever, and that he did not know or have reason to believe or know that such cattle would or could communicate the Texas, splenic or Spanish fever to the cattle of this state, till they arrived at Manhattan, Riley county, and that the sheriff immediately seized said cattle by virtue of a process issued by Wilder, a justice of the peace, and before the plaintiff's cattle had been exposed, and were by the sheriff placed in quarantine, and the defendant, Adams, was deprived of any control over said cattle, and that during the time the said cattle were quarantined by the sheriff, and the defendant deprived of the control of said cattle, the plaintiff's cattle took said disease by going upon said quarantined grounds, either while defendant's cattle were there in the custody of the sheriff or his deputy, or after they were removed therefrom, then the plaintiff cannot recover in the action."

The court also advised the jury that if the plaintiff opened the gates and turned her cattle into the inclosure where the diseased cattle were being held, as described in the answer, she

would be guilty of contributory negligence, and could not recover. The plaintiff excepted to the rulings of the court upon the instructions refused and given. The verdict and judgment being in favor of the defendant, the plaintiff brings the case to this court for review.

*A. H. Case*, and *Charles Curtis*, for plaintiff in error.

*Green & Hessin*, and *Peck, Johnson & McFarland*, for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: There are really but two points in controversy between the parties in this case: one is, whether a person who purchases or otherwise obtains cattle that are diseased with Texas, splenic, or Spanish fever, and who drives or causes them to be driven through any county of the state, shall be held liable for all damages that may arise by the communication of disease from the cattle so driven, without regard to whether he knew or should have known that the cattle were diseased, or liable to communicate disease to the domestic cattle of the state. The other point involved is, whether the doctrine of contributory negligence is applicable to an action like the present one. The action was brought under the statute enacted for the protection of cattle against contagious diseases. (Laws of 1881, ch. 161; Laws of 1884, ch. 3.) The act of 1881, in section 1, provides:

"That no person or persons shall drive or cause to be driven into or through any county in this state, any cattle diseased with the disease known as Texas, splenic or Spanish fever. Any person violating any provision of this act shall on conviction be adjudged guilty of a misdemeanor, and shall be fined not less than one hundred and not more than one thousand dollars, and be imprisoned in the county jail not less than thirty days and not more than one year."

The act then provides how such cattle, or the cattle of any person violating the act, shall be restrained and disposed of. In the sixth section it is provided that in the trial of persons charged with a violation of the act, proof that the cattle driven

are wild, and of undomesticated habits, shall be taken as *prima facie* evidence that the cattle are diseased with the fever. Section 7 of the act is as follows:

"Any person or persons who shall drive or cause to be driven into or through any county in this state, any of the cattle mentioned in section 1 of this act, in violation of this act, shall be liable to the party injured for all damages that may arise from the communication of disease from the cattle so driven, to be recovered in civil action; and the party so injured shall have a lien upon the cattle so driven."

The act of 1884 is substantially the same as the act of 1881, so far as the civil liability provided for is concerned. It sets apart a portion of the state as quarantine ground, upon which Texas cattle, or cattle liable to communicate Texas, splenic or Spanish fever, may be permitted to range under the care of keepers; makes it a misdemeanor for any person to allow Texas cattle to go upon any grounds outside of the quarantine grounds, with penalties similar to those imposed by the act of 1881; and it further provides that such person "shall be held liable for all damages that may be done by said cattle, either by communicating disease, or in any other manner; and the person or persons so injured shall have a lien on the cattle so doing the damage." In construing the acts upon which the alleged liability is founded, we are not aided by testimony of the nature of the disease, and of the peculiarities of the cattle against which this legislation is directed, as the record contains none of the evidence. We are of opinion, however, that the court took the correct view of the statutes in holding that no recovery could be had against the defendant where he acted in good faith, unless he had knowledge, or such facts existed as made him chargeable with knowledge that the cattle were diseased, or were of a kind liable to communicate the disease to the domestic cattle of the state. The statute does not in terms dispense with the necessity of averring and proving the knowledge of the defendant. The theory of the statute is that the liability arises upon the negligence of the party who drives, or causes to be driven the cattle that communicate the fever; and how can negligence be attributed to those who go

into a market in the state and purchase such cat-
1. Spanish fever; tle, when they have no notice and no facts exist
damages; de-
fendant's
knowledge to by which they would be chargeable with notice
be proved.
that the cattle had the fever, or were liable to
communicate it? The rule of the common law in such cases
is, that knowledge is indispensably necessary to a recovery.
(Wade on Notice, 2d ed., 271; Chitty's Pleading, 69; *Vroo-
man v. Lawyer*, 13 Johns. 339; *Dearth v. Baker*, 22 Wis. 73;
*Lyke v. Van Leuven*, 4 Denio, 127.)

In construing statutes, it is well to keep in mind the rules
of the common law; and in respect to this it has been well
said that—

"Statutes are to be construed in reference to the principles
of the common law; for it is not to be presumed that the
legislature intended to make any innovation upon the common
law further than the case absolutely required. The law rather
infers that the act did not intend to make any alteration other
than what is specified, and besides, what has been plainly pro-
nounced." (Dwarris on Statutes, 185.)

Doubtless the legislature has the authority to dispense with
the necessity of alleging and proving knowledge, but before a
party who is without fault or without knowledge that his cat-
tle can cause injury, can be held liable, the legislative design
to create such liability should be "plainly pronounced." An
example of how slow the courts are to extend this rule is
shown by a decision given in Wisconsin. In 1866 the legis-
lature of that state provided that—

"The owner or keeper of any dog or dogs which shall have
wounded, maimed, or killed any cattle, horses, sheep, or lambs,
or injured any persons, shall be liable to the owner or legal
possessor of such cattle, horses, sheep, or lambs, or to the per-
son injured, in all damages so done by said dog or dogs, without
proving notice to the owner or keeper of such dogs, or knowl-
edge by him that his dog was mischievous or disposed to kill
or worry sheep."

Notwithstanding the general terms used in that statute in
stating that for injuries done by dogs to persons, or to cattle,
horses, sheep, or lambs, the owner should be held liable with-

out notice, the supreme court, in an action brought under the statute for injury done to a person, remarked that it was strongly inclined to the opinion that the necessity of proving a *scienter* was still necessary in all actions except for killing or worrying sheep. ( *Kertschacke v. Ludwig*, 28 Wis. 430. See also *Auchmuty v. Ham*, 1 Denio, 495.)

Then again it seems to us that a subsequent statute on this subject shows that it was never intended by the legislature to dispense with proof of knowledge in these cases. The legislation on this subject is for the protection of the domestic cattle of the state, and nearly all of the provisions made are very strongly in the interest of the owners of such cattle. Those who bring in diseased cattle, or cattle liable to communicate the Spanish fever, are made both criminally and civilly liable. To render the law easy of enforcement against such persons, it is provided that in any trial under the act, proof that the cattle are wild and of undomesticated habits is *prima facie* evidence that they are diseased. Then in 1885, the legislature, to still further relieve the plaintiff from the burdens imposed by the general rules of law, provided that where the cattle which communicated the disease were brought into the state —

"From south of the thirty-seventh parallel of north latitude, it shall be taken as *prima facie* evidence that such cattle were capable of communicating and liable to impart Texas, splenic or Spanish fever, within the meaning of the act, *and that the owner or owners, or the person in charge of such cattle, had full knowledge and notice thereof*, at the time of the commission of the alleged offense." ( Laws of 1885, ch. 191, § 5.)

By this provision, the legislature recognized that proof of knowledge was and is necessary. It modified the general rule by making the facts stated *prima facie* proof of something which was deemed essential to a recovery. The plaintiff was thereby relieved to some extent from a burden which the legislature assumes rests upon him. There was no necessity for making this provision if the proof of knowledge was not required. We conclude that the interpretation placed upon the

statute by the plaintiff in error is not sound, and that the true rule upon the question was stated by the district court.

With regard to the question of contributory negligence, we have no doubt that it enters into and may constitute a defense. The action is not for the recovery of a penalty, but to recover compensation for the willful negligence wrought by another. Penalties are prescribed in the criminal features of the statute, and certainly it was not intended that any others should be imposed. There is nothing in the statute indicating that the obligation of the defendant is absolute, or that the plaintiff can recover where the injury is the result of his own wrong-doing. " When the wrong of both parties contributes to the injury, the law declines to apportion the damages, and so leaves the injured party without any compensation." ( *K. P. Rly. Co. v. Pointer*, 14 Kas. 50.) If the plaintiff, as was alleged in the answer, willfully and negligently opened the gates of the inclosure, and turned her cattle in with those that were diseased, the injury was the direct result of her own negligence. What the facts were as developed on the trial we cannot know; and all we can or do decide is, that the rule of contributory negligence is applicable in these actions, and that the instruction thereon was warranted under the pleadings in the case. ( *K. C. Ft. S. & G. Rld. Co. v. McHenry*, 24 Kas. 501 ; *Curry v. Railway Co.*, 43 Wis. 665 ; *Railway Co. v. Methven*, 21 Ohio St. 586 ; *Keech v. Railroad Co.*, 17 Md. 32.)

2. Contributory negligence.

We find no error in the record.

The judgment of the district court will be affirmed.

All the Justices concurring.