SELVEGE V. ST. LOUIS & SAN FRANCISCO RAILWAY COM-
PANY, *Appellant.*

### Division Two, June 30, 1896.

1. **Railroads:** TRANSPORTATION OF TEXAS CATTLE: TEXAS FEVER:
   INTERSTATE COMMERCE. Sections 953, 954, of the Revised Statutes of
   1889, in so far as they forbid the transportation through this state of
   Texas or other cattle therein named, affected with Texas fever, are
   void as an interference with interstate commerce.

2. ———: ———: ———: ———: NEGLIGENCE. A railroad company
   is not liable for loss of stock from Texas fever contracted from other
   stock escaping from its cars while being shipped through this state
   in the absence of an·allegation or proof of negligence on the part of
   the company.

*Appeal from Laclede Circuit Court.*—HON. C. C. BLAND,
Judge.

REVERSED.

*L. F. Parker* and *J. T. Woodruff* for appellant.

From the petition it will be seen that respondent
predicates his right of recovery upon sections 953 and
954, Revised Statutes, 1889, and it appearing from the
agreed statement of facts that this was an interstate
shipment, the case is clearly within the case of *Grimes
v. Eddy*, 126 Mo. 168, where it is held that the pro-
visions of the sections above referred to, leveled against
railroad companies in transporting Texas cattle through
Missouri, is in conflict with the constitution of the
United States regulating commerce among the several
states. The decision in that case, we think, is decisive
of the issues in this and we therefore ask that this
cause be reversed and dismissed.

*J. P. Nixon* for respondent.

GANTT, P. J.—This action was commenced before a justice of the peace upon the following statement:

"Plaintiff, John Selvege, for his cause of action, states that the St. Louis & San Francisco Railroad Company at the time hereinafter mentioned was a corporation duly organized under the laws of the state of Missouri.

"Plaintiff further states that the said railroad company did between the first day of April, 1892, and the first day of June, 1892, bring into, upon and through Laclede county, Missouri, and from one part of said county to another part of said county, on its railroad, Texas, Mexican, Cherokee, or Indian cattle affected with what is commonly called Texas or Spanish fever and with other contagious and infectious diseases.

"Plaintiff further states that said Texas or Spanish fever and other contagious disease was communicated from said diseased cattle to animals in the neighborhood and along the line of such transportation and that on or about the eighteenth day of September, 1892, plaintiff was the owner of three cows of the value of one hundred and five dollars; that said Texas, Mexican, Cherokee or Indian cattle so transported by defendant company on its cars, was and said cattle went at large in the neighborhood and along the line of said railroad of said defendant, and that Spanish or Texas fever and other infectious and contagious fever or disease was communicated from such diseased animals to the said three cows of plaintiff by reason of which said cows of plaintiff became diseased and died, by which plaintiff was damaged in the sum of one hundred and five dollars, for which plaintiff prays judgment with costs of suit."

Judgment was rendered in plaintiff's favor by the justice, and in due time the case was appealed to the circuit court, where it was tried before the judge thereof sitting as a jury, upon the following agreed statement:

"It is hereby stipulated and agreed that the court shall consider the following facts in said cause, to wit:

"That in the month of September, 1892, after the wreck at Brush Creek hereinafter stated, the animals described in plaintiff's petition died of disease, and upon a post-mortem examination their appearance indicated that they died of Texas or Spanish fever, and the value of said cows was $105 at the time of their death; that their symptoms prior to death, and their appearance after death, were those of an animal affected by Spanish or Texas fever, and that their usual range was in Clough's addition to the town of Lebanon, and particularly around and near the stock yards in said town. That several other animals which usually grazed in the same range died at about the same time, and had symptoms similar to plaintiff's cows before death, and similar appearances afterward.

"That on the twenty-second day of June, 1892, there was a wreck on defendant's railroad near Brush Creek, in Laclede county, Missouri, about seven miles west of Lebanon, by which several cars of a freight train were derailed, and that in that wreck one car loaded with cattle was broken up and the cattle therein escaped to the adjacent country, and that no cattle escaped from any other car in said train. That said car was badly broken up, the end of it being broken out and the running part thereof being in such a condition that it was impossible to run the same farther on said road; and that the same remained upon the roadbed and track of the defendant until after the cattle were removed therefrom as hereinafter stated; and that by reason of said

car and running gear being upon the roadbed no other train could pass there until said car was removed and that the cattle from said wrecked car after the wreck were turned out of said car by defendant's employees opening the car and turning them out upon the right of way. That said car was marked in plain letters on the side thereof 'Southern cattle;' and that the said cattle that so escaped had the appearance of Texas cattle, but appeared to be healthy cattle; said cattle were collected by the employees and agents of defendant from off the range the next day afterward and were driven up the public road to the town of Lebanon through Clough's addition to said town and were there placed in the stock yards about dark the next night after the wreck and during the night were shipped away. The stock yards in which these cattle were placed were the same stock yards as those near and around which plaintiffs' animals were in the habit of grazing.

"That there were no deaths among native cattle at and around Lebanon in Laclede county, Missouri, with symptoms of Texas fever till after the wreck at Brush Creek and that after that time a large number of native cattle in the ranges through which the Texas cattle from the wreck were driven, died with symptoms of Texas fever and no native cattle died with such symptoms, except such as grazed in the ranges through which the Texas cattle passed. That after the said wreck near Brush Creek in Laclede county, Missouri, the native cattle in Laclede county, Missouri, along the line and right of way of the St. Louis & San Francisco Railroad over which the said Texas cattle were being transported, died with all the characteristic symptoms and lesions peculiar to the Texas or Spanish fever, and that there were no native cattle died of such disease except such as passed through such ranges

where the Texas cattle had been. That all the native cattle that died of Texas fever were usually kept on the range and in the immediate vicinity of defendant's right of way in Laclede county, Missouri.

"That said Texas cattle while being so driven to stock yards at Lebanon, stampeded and ran around and about the neighborhood in which plaintiff's cow was grazing and on which she grazed until she became sick, as above stated; that it is a scientific fact that cattle from a district infected with Texas fever, though perfectly healthy themselves, can, and sometimes do, disseminate the disease known as Spanish or Texas fever among native cattle, and that the disease can be communicated by such healthy cattle from an infected district in different ways, and one of the ways is by native cattle passing along or across the range through which infected Texas cattle have passed.

"That the defendant operates a line of railway running from Paris, Texas, through the Indian Territority and Arkansas, and also a line from Sapulpa in the Indian Territory by way of Vinita in the Indian Territory through Missouri to the city of St. Louis, and that said road connects with the Missouri, Kansas & Texas Railroad at Vinita, and that said lines of road meet at Monett, Missouri, and cars from all of said lines pass over the main line of road from Monett to the city of St. Louis, and that said main line passes through Laclede county, Missouri, and that Brush Creek and Lebanon are both stations on said line between Monett and St. Louis; that the only car broken open in said wreck, which took place near Brush Creek, Laclede county, Missouri, on June 22, 1892, was stock car initialed 'C. C. C. C.' and numbered 2287; that said car contained twenty-three (23) head of beef cattle shipped by Samuel Hunnicut from Greenville, in the state of Texas, which were consigned

by Samuel Hunnicut, from Greenville, Texas, direct
to Cassidy Brothers, National Stock Yards, East St.
Louis, Illinois; that they were shipped on a through
bill of lading from Greenville, Texas, over the Mis-
souri, Kansas & Texas Railway to Vinita, Indian Ter-
ritory, and from Vinita to St. Louis, Missouri, over the
St. Louis & San Francisco Railway, and from St.
Louis, Missouri, to East St. Louis, Illinois, over the
Bridge Terminal Company; that said cattle were un-
loaded and fed at Vinita, and from that point were
destined direct to East St. Louis without any intention
of unloading in Missouri, and that except for the acci-
dent resulting in the wreck of June 22, 1892, the same
would have passed directly through the state of Mis-
souri without unloading, and without any delay, except
such as is necessarily incident to such traffic and the
transfer to and over the terminal lines; and that the
cattle so shipped by the said Samuel Hunnicut from
Greenville, Texas, to Cassidy Brothers, East St. Louis,
Illinois, were the same cattle that escaped from the car
near Brush Creek, Laclede county, Missouri, on June
22, 1892, to the adjacent country, and which were gath-
ered and put in the stock yards at Lebanon, Missouri,
by the employees and agents of the defendant, as
above stated; that over the face of the said bill of lad-
ing was written 'Southern Cattle,' and also the word
'Quarantine,' and if the finding shall be for plaintiff
judgment shall be entered in his favor for the sum of
$105 and costs.

"That it is further agreed that germs of Texas or
Spanish fever are scattered or set out in ranges of
native cattle by Texas or Spanish cattle passing through
the ranges of native cattle, and that such germs will
continue to live and may be communicated to, and
thereby affect native cattle with Texas or Spanish fever

at any subsequent time until such germs are killed by freezing during the following winter."

The defendant then prayed the court to give the following instructions:

"The court declares the law in this case as follows:

"*First.* Under the stipulations of the facts in this case, the plaintiff is not entitled to recover, and the finding shall be for the defendant.

"*Second.* That the provisions of 953 of the Revised Statutes of Missouri, for the year 1889, in so far as they apply to interstate commerce, are unconstitutional and void, and are in conflict with section 8, article 1, of the constitution of the United States.

"*Third.* That the provisions of 954 of the Revised Statutes of Missouri, for the year 1889, in so far as such provisions apply to interstate commerce, are unconstitutional and void, and are in conflict with section 8, article 1, of the constitution of the United States."

Which the court refused to do. To which refusal of the court to give such instructions, defendant then and there excepted at the time.

The court found for the plaintiff, and rendered judgment accordingly.

It is apparent on the face of the petition that plaintiff's right to recover is bottomed upon sections 953 and 954, Revised Statutes of Missouri, 1889. It also appears beyond all cavil that the cattle were shipped from Texas to Illinois, and at the time of the accident to the car in which they were loaded, were being transported through this state without any intention of being unloaded within our borders. Cattle thus transported are articles of interstate commerce, and such a shipment falls clearly within the authority of congress to regulate commerce between the states.

In the recent case of *Grimes v. Eddy*, 126 Mo. 168, said sections 953 and 954 were condemned by this court, *in banc*, as an attempt to regulate commerce between the states, and, therefore, in contravention of the constitution of the United States, and void.

As no allegation of negligence is made in the statement, and the agreed statement discloses none, there appears to be no foundation whatever for a recovery. The judgment of the circuit court is reversed. SHERWOOD and BURGESS, JJ., concur.