Rouse v. Youard.

HENRY C. ROUSE, *as Receiver de bonis non of the Missouri, Kansas & Texas Railway Company* v. ANNA YOUARD.

1. EVIDENCE — *Verdict, When Not Disturbed.* Where there is evidence tending to prove each fact necessary to support the verdict of the jury, and the jury have rendered their verdict on such evidence, this court cannot disturb the verdict, although the court might have come to a different conclusion on the whole evidence.

2. FINDINGS, *Inconsistent With Verdict — Duty of Court.* When the special findings of fact returned by the jury are inconsistent with the general verdict, the special findings of fact are controlling, and the court should either render a judgment in accordance with the special findings, or set the findings and verdict aside and grant a new trial.

3. EXPERT, *Who is — Who is not.* Where a person has been educated in a particular profession or trade, as a physician, surgeon, veterinarian, or engineer, or the like, is presumed to understand thoroughly the questions pertaining to his profession or trade, he is termed an expert, and is qualified to give opinions on subjects coming within the scope of his profession or trade; but a witness who is not educated in any particular profession or trade is not competent to give an opinion in any matter that requires science or skill to determine, although he may have frequently seen the treatment of diseases by physicians or operations made by surgeons, and have assisted veterinarians in the treatment of stock for diseases, and have read extensively from books and papers treating on diseases of stock.

4. DANGEROUS ARTICLES — *Common Carriers, When not Relieved from Liability.* Common carriers, in the transportation or handling of articles that are dangerous to health or property of others, where they have a knowledge of such dangerous characacter, or by the use of due care should have knowledge thereof, will not be relieved of the liability for damage done in consequence, or injury to others, by the transportation or handling of such dangerous articles.

5. INTERSTATE COMMERCE — *Police Power — Valid Statute.* The provisions of chapter 161, Laws of 1881, as amended by chapter 191, Laws of 1885, are not an intrusion on the interstate commerce clause of the constitution of the United States, but a legitimate exercise of the police power of the state which extends to the protection of life, limb, health, comfort and quiet of all persons,

and the protection of all property within the state; following the decisions in the cases of *Patee v. Adams*, 37 Kas. 136, and *Mo. Pac. Rly. Co. v. Finley*, 38 id. 554.

MEMORANDUM.—Error from Labette district court; J. D. McCUE, judge. Action by Anna Youard against Henry C. Rouse, receiver. Plaintiff recovered judgment, and defendant brings the case to this court. Reversed. Opinion filed August 6, 1895.

The statement of the case, as made by JOHNSON, P. J., is as follows :

On the 13th day of January, 1890, Anna Youard filed a bill of particulars before J. D. Scott, justice of the peace in and for the city of Parsons, in Labette county, Kansas, in which she stated as her cause of action that George A. Eddy and H. C. Cross were the duly-appointed, qualified and acting receivers of the Missouri, Kansas & Texas Railway Company, and as such are and at the times hereinafter mentioned were in possession and control of and engaged in operating the Missouri, Kansas & Texas railroad ; that in the month of July, 1889, they unlawfully and negligently transported to and unloaded, drove, fed and littered at their stock-yards near Parsons, in Labette county, Kansas, cattle afflicted with Texas, splenic or Spanish fever, a large number of which died at said stock-yards of said disease ; that said defendants negligently drove said cattle into said stock-yards in said county, and negligently allowed the same to remain and die in said stock-yards of said contagious disease, and thereafter negligently gathered up the litter in said stock-yards, infected by said cattle with said disease, and placed the same upon and near the pasture of plaintiff, in which her cattle were feeding, by reason whereof four cows owned by the plaintiff, without any

negligence on her part, became infected with said disease and died, to her damage of $200 ; and her pasture became dangerous and unfit for use for the pasturage of cattle, and she was deprived of the use thereof, to her damage of $25 ; and prays judgment for the sum of $225, her damages, and $50 as attorney's fees for prosecuting her action.

Defendants were duly notified of the filing of said bill of particulars and the pendency of said action by service of summons, and said cause was tried before said justice of the peace, and resulted in a judgment in favor of the plaintiff below ; and the case was taken to the district court of Labette county on appeal, and was tried in the district court by a jury. The jury returned a verdict in favor of the plaintiff below, and made and returned with their general verdict special findings of fact. A motion was made by defendants below for judgment against the plaintiff on the special findings of fact, notwithstanding the general verdict. The motion was overruled and excepted to. A motion for a new trial was filed, and overruled, and excepted to. Judgment for plaintiff below on verdict of the jury, and excepted to, and the case filed in the supreme court for review. Since the rendition of the judgment in the district court and the filing of the case in the supreme court, the said George A. Eddy and H. C. Cross, receivers, have both died, and Henry C. Rouse has been duly appointed by the United States circuit court receiver *de bonis non* of the Missouri, Kansas & Texas Railway Company, and the action has been revived in the name of said Henry C. Rouse, receiver *de bonis non*. The case was duly certified by the supreme court down to this court for review, and both parties have appeared in this court and filed briefs and argued said case before the court.

*T. N. Sedgwick*, for plaintiff in error.

*Kimball & Osgood*, for defendant in error.

The opinion of the court was delivered by

JOHNSON, P. J.: The first error complained of in the brief of counsel for plaintiff in error is that the evidence on the trial was wholly insufficient to sustain the verdict of the jury or the judgment in favor of Anna Youard against the receivers of the Missouri, Kansas & Texas Railway Company. This court cannot disturb the verdict of the jury, or the judgment of the court founded thereon, unless there was an entire want of evidence to prove some material fact necessary to entitle the plaintiff below to recover. To do so would be to disregard entirely the right of trial by jury. The jury had the witnesses before them, had an opportunity to hear their testimony as it was delivered and observe the demeanor of each witness on the stand and the manner of giving his testimony, and in fact had an opportunity to see and determine whether his entire conduct and manner of giving his evidence was such as to impress an impartial trier with the truthfulness of his statements. It is the province of the jury to determine the credibility of each witness, and to weigh and determine what the evidence proves on the trial of the case; and where there is evidence tending to prove each material fact necessary to the findings of the jury, and the jury have rendered their findings thereon, this court cannot disturb the verdict, although this court might have come to an entirely different conclusion upon the whole evidence. We have examined the evidence contained in the record, and find that there was some evidence tending to prove each material matter neces-

18—APP.

sary to entitle the plaintiff below to a recovery, and the trial court having sustained the verdict, this court cannot say that there was such lack of evidence to support the verdict as will authorize a reversal of the judgment for that reason.

The second error complained of by counsel for plaintiff in error in his brief is that, the jury having returned a general verdict and made special findings of fact, the findings of fact are so inconsistent with the general verdict that the court should have set the verdict aside. The two findings of fact that are alleged to be inconsistent with the general verdict are as follows:

"No. 9. Did any of the plaintiff's cattle come in contact with any of the cattle shipped by the defendants to the stock-yards at Parsons? Ans. No evidence.

"No. 10. How close did plaintiff's cattle come to the litter which she claims the employees dumped on her land? Ans. Evidence does not prove."

These two facts were material to the right of plaintiff below to recover. Her action was based on the fact that defendants had neligently transported to and unloaded, drove, fed and littered at the stock-yards in Parsons cattle affected with Texas, splenic or Spanish fever, a large number of which died at said stock-yards of said disease; that defendants negligently drove said cattle into said stock-yards, and negligently allowed the same to remain and die in the said stock-yards of said contagious disease, and thereafter negligently gathered up the litter in said stock-yards infected by said cattle with said disease and placed the same upon and near the pasture of plaintiff, in which her cattle were feeding, by reason whereof her own cows became infected with said disease and died, to her damage. In order to entitle plaintiff to recover, it was necessary for her to prove and satisfy the jury

that her cows became infected with the Texas, splenic or Spanish fever by being communicated to them by either coming into contact with the diseased cattle or with the litter carelessly and unlawfully placed near her pasture. The charges were that all these things were done by the receivers of the railway company carelessly, and by reason of the wrongful and careless acts of the receivers the contagious disease was communicated to her cows; consequently they died and she was damaged thereby. But, however unlawful and negligent the act of the receivers and their servants may have been, the plaintiff would have no cause of action against them unless their negligent and wrongful acts resulted in the communication of the contagion to her cows, and thereby resulted in their death and consequent loss to her, The mere fact that the cows of plaintiff below died from the same kind of disease that killed the cattle in the stock-yards of the receivers would not give the plaintiff below a right of action unless in some manner that disease was communicated to her cows from the diseased cattle in the stock-yards or by the litter placed by them near her pasture. It was the right of the receivers to have the jury, when they returned a general verdict, to make special findings of fact; and if the special facts as found by the jury were inconsistent with their general verdict, they were controlling, and judgment should have either been rendered in accordance with the special facts as found, or the verdict should have been set aside. (Gen. Stat. of 1889, ch. 80, § 287.) The jury determine what facts are proven by the evidence. Where the evidence is somewhat conflicting in regard to a question, the findings of the jury thereon are conclusive.

The third error complained of by counsel for plain-

tiff in error in his brief is, that the court erred in permitting witnesses, over the objection of the defendant below, to give their opinions as to what disease the cows of plaintiff below died with, for the reason that such witnesses were not shown to be what is termed "experts;" that they were not persons educated or skilled as veterinary surgeons, who had made diseases of cattle a study, and could point out and describe the chief characteristics or symptoms that would distinguish the disease of Texas, splenic or Spanish fever from murrain or any other disease. The witnesses, Ed. Scheinbuer and Alfred Yesley, were called, and each was permitted, over the objection of the receivers, to give his opinion as to what disease the cows of plaintiff below died of, and also to give his opinion as to the disease of the cattle in the stock-yards. These witnesses were neither of them veterinary surgeons, and neither was shown to possess the legal qualifications of an expert. The opinions of witnesses are, in general, not evidence. Yet, on certain subjects, some classes of witnesses may give their own opinions, and on certain other subjects any competent witness may express his opinion. On the questions of science, skill, or trade, persons of skill or science, commonly called "experts," may not only testify to facts, but are permitted to give their opinions in evidence. A medical man may give his opinion as to the cause of disease or death. So a veterinary surgeon may give his opinion as to what cause produced diseases in animals, and whether the disease is contagious, and how the disease may become communicated to other animals, and also as to what disease an animal died of; and may found his opinion on his own observation or on the symptoms described by other witnesses. As a physician, surgeon or veterinarian is presumed to un-

derstand thoroughly the questions pertaining to his profession, he is allowed to give his opinion respecting any subject that comes within his profession. But persons not acquainted with the science of medicine, surgery, or veterinary, who may have had some experience in observing the treatment of diseases by physicians or operations performed by a surgeon, or in the handling of stock and in reading accounts of different diseases among animals, are not supposed to be possessed of the necessary qualifications of an expert; and it was error to permit these witnesses to give in evidence their opinions as to the disease the cattle were affected with and from which they died. It was competent for these witnesses to state the symptoms that they noticed in the cattle, the conduct of the animals, and all the conditions that were observable when they first discovered the cattle were sick, the appearance of the animals and length of time that occurred before death, and the appearance on the *post mortem*.

It is claimed by counsel for the receivers that there is no evidence that any of the agents or servants of the receivers, or the receivers themselves, had any knowledge that any of the cattle shipped or transported and unloaded into the stock-yards at Parsons were infected with the disease known as Texas, splenic, or Spanish fever, or were capable of communicating the disease to native cattle. We think the evidence shows such condition of the cattle that it was sufficient to impart notice to the agents and servants of the receivers. The evidence shows that the cattle were generally wild and undomesticated, and that they were shipped by the receivers from southern Texas, a region of country where it is declared to be *prima facie* evidence that the cattle are diseased and capable of imparting it to the native cattle. All

cattle coming from the low lands in the southwest near the gulf bring with them a contagious disease, commonly known as Texas, splenic, or Spanish fever. It was also shown in the evidence that a large number of these cattle were diseased, and died in the stock-yards at Parsons, and that, while said cattle were sick and dying from the disease in the stock-yards, the agents and servants of the receivers, with wagons and teams, were engaged in taking up the litter that the diseased cattle had infected with the disease and were placing it in and near the pasture of the plaintiff below, and also placing it in the stream of water which ran through her pasture, so as to communicate the disease to her cattle. The action was prosecuted by plaintiff, not for the mere fact that the receivers shipped diseased cattle to their stock-yards at Parsons, but for the negligent handling of the stock infected, and carelessness about the stock-yards.

It is also contended that there was no effort made on the trial of the case to show that the receivers had violated either the interstate commerce law or the law providing for a bureau of animal industry and regulation of the transportation of cattle through that portion of the south known as the infected area. We do not think it was necessary to a recovery in this case to prove the violation of either the interstate commerce law or the law providing for a bureau of animal industry. If the agents and servants of the receivers were guilty of the negligence complained of in the bill of particulars of the plaintiff below, she was entitled to recover. If the agents and servants negligently and carelessly took the litter from the stock-yards and placed it in such proximity to the pasture where her cows were kept, and her cows became diseased thereby and were lost to her in consequence of

the wrongful and negligent act of the receivers or their agents and servants, then she was entitled to recover the full amount of damages sustained by her. A common carrier cannot be relieved of his liability for his negligence in exposing dangerous articles where they are known to be dangerous, or, by the exercise of due care he ought to have known the dangerous character thereof.

The final contention of counsel for the receiver is that chapter 161, Laws of 1884, as amended by chapter 191, Laws of 1885, are in conflict with the clause in the constitution of the United States which provides: "Congress shall have power to regulate commerce with foreign nations and among the several states;" that the cattle shipped in the yards at Parsons by the receivers were interstate shipments, and were not destined to points in the state of Kansas. The plaintiff below did not base her action exclusively upon the statute, but upon the negligence of the receivers in the handling of diseased cattle while in the stock-yards at Parsons, and the wrongfully and negligently taking the litter that was infected by the cattle with the disease of Texas, splenic or Spanish fever, and carelessly and wrongfully placing it in and near the pasture where she was keeping her cattle, and in the stream of water running through her pasture. If she proved the allegation in her bill of particulars, she was entitled to recover under the common law, regardless of the statute. Her suit was based on the negligent and wrongful conduct of the receivers. But, if this were not so, we think she could still recover under the statute, if she could prove the necessary facts. The supreme court of Kansas has held that this statute is not in conflict with the clause commonly referred to as the interstate-commerce clause of

the constitution. (*Patee v. Adams*, 37 Kas. 136 ; *Mo. Pac. Rly. Co. v. Finley*, 38 id. 554.)   These acts were for the protection of cattle against contagious diseases.   The act of 1881, by the first section, provided against the bringing into this state any cattle diseased with the. disease known as the Texas, splenic or Spanish fever, and makes the driving of them into the state, or into any county in the state, a misdemeanor, and provides that any person, on conviction thereof, shall be fined and imprisoned.   The act also provides that "any person driving or causing to be driven any cattle mentioned in the first section of the act, in violation of the act, to be liable to any party injured for all damages that may arise from the communication of the disease from the cattle so driven, to be recovered in a civil action."

This act was amended in 1885, by chapter 191, which reads as follows :

"SECTION 1. No person or persons shall, between the first day of March and the first day of December of any year, drive or cause to be driven into or through any county or part thereof in this state, or turn upon or cause to be turned or kept upon any highway, range, common or uninclosed pasture within this state, any cattle capable of communicating or liable to impart what is known as Texas, splenic or Spanish fever.   Any person violating any provision of this act shall, upon conviction thereof, be adjudged guilty of a misdemeanor, and shall for each offense be fined not less than $100 and not more than $2,000, or be imprisoned in the county jail not less than 30 days and not more than one year, or by both such fine and imprisonment."

.     .     .     .     .     .     .     .     .     .

"SEC. 5. In the trial of any person charged with the violation of any of the provisions of this act, and in the trial of any civil action brought to recover damages for the communication of Texas, splenic or

Spanish fever, proof that the cattle which such person is charged with driving or keeping in violation of the law, or which are claimed to have communicated the said disease, were brought into this state between the first day of March and the first day of December of the year in which the offense was committed or such cause of action arose, from south of the thirty-seventh parallel of north latitude, shall be taken as *prima facie* evidence that said cattle were capable of communicating and liable to impart Texas, splenic or Spanish fever, within the meaning of this act, and that the owner or owners, or person in charge of such cattle, had full knowledge and notice thereof at the time of the commission of the alleged offense.''

These statutes are not an interference with the transportation laws of congress, known as the interstate-commerce regulations, power to enact which is given exclusively to congress by the constitution. They are not intended to prohibit the transportation of all cattle coming from the region of country south of the thirty-seventh degree of north latitude, but only such as are diseased and capable of communicating disease to the native cattle of Kansas. It is only the rightful exercise of police regulation for the protection of the native cattle of this state against a dangerous and deadly disease that, if not regulated, will result in great loss to the cattle-owner of this state. Mr. Justice Strong, in delivering the opinion of the court in the case of *Rld. Co. v. Husen*, 95 U. S. 470, says :

''We admit that the deposit in congress of the power to regulate foreign commerce and commerce among the states was not a surrender of that which may properly be denominated police power. What that power is it is difficult to define with sharp precision. It is generally said to extend to making regulations promotive of domestic order, morals, health, and safety. As was said in *Thorp v. R. & B. Rly. Co.*, 37 Vt. 149 : ' It extends to the protec-

tion of the lives, limbs, health, comfort and quiet of all persons and the protection of all property within the state.' The same principle, it may be conceded, would justify the exclusion of property dangerous to the property of citizens of the state : for example, animals having contagious or infectious diseases. All these exertions of power are in immediate connection with the protection of persons and property against noxious acts of other persons, or such a use of property as is injurious to the property of others. They are self-defensive.''

The police power is commensurate with the sovereignty of the state, and is of necessity despotic ; and individual rights of property beyond express constitutional restraint must yield to its force. Under it, everyone having property holds it under the implied liability that its use shall not be injurious to the equal enjoyment of others having an equal right of the community. ( 2 Kent, Com. 338 ; Potter, Dwar. Stat. 444.)

In the case of *Mo. Pac. Rly. Co. v. Finley*, supra, an action to recover damages against the railway company under the statute of Kansas for the protection of cattle against contagious diseases, Chief Justice HORTON, delivering the opinion of the court ( after commenting on the decision of the supreme court of the United States in the case of *Rld. Co. v. Husen*, which held that the statute of Missouri was void, for the reason that the same tends to place an embargo upon interstate commerce,) pointing out the difference between the provisions of the statute of Missouri and the statute of Kansas, and quoting from the opinion of the supreme court of the United States in the case of the *State of Kansas v. Mugler*, 123 U. S. 623, wherein the court says : '' Property, under our form of government, is subject to the obligation that it shall

not be used so as to injuriously affect the rights of the community. . . . It belongs to the legislative branch of the government to exert what are known as police powers of the state, and to determine primarily what measures are appropriate or needful for the protection of the public morals, the public health, or the public safety," says :

"The decision is only the recognition of the doctrine that the police power of the state extends to the protection of the lives, limbs, health, comfort and quiet of all persons, and the protection of all property within the state. We have construed the acts upon which the alleged liability is founded in this case so that no recovery can be had against any person or corporation acting in good faith, unless such person or corporation had knowledge, or such facts existed as to make the person or corporation chargeable with knowledge, that the cattle driven or transported into the state were diseased, or were of a kind liable to communicate disease to domestic cattle of the state. (*Patee v. Adams*, 37 Kas. 133.) As thus construed, we do not think that the statute of the state an intrusion upon the exclusive domain of congress. And we think that the statute, aided by the testimony of the nature of Texas, splenic or Spanish fever and the peculiarities of Texas or southern cattle so diseased against which this legislation is directed, has for its substantial object the protection of the property of the citizens of the state, and therefore ought to be sustained. Clearly, the object of this statute is not to obstruct interstate commerce, but solely to exclude from the state cattle having contagious or infectious diseases, and therefore wholly for the immediate protection of the property of this state against the noxious acts of other persons, or such a use of their property as is dangerous and injurious to the cattle interests of this state. If this law is not constitutional and within the police power of the state, then the state is absolutely powerless to protect the property of its citizens. If this and similar statutes are

in conflict with the constitution of the United States, the state is wholly disarmed and defenseless to exclude property from the state that is dangerous and injurious to the property of its citizens. We think the statute can be fully justified as the legitimate exercise of the police power of the state, and that it is not usurpation of the power vested exclusively in congress. It is founded upon the law of self-defense.''

The constitutionality of this law being fully sustained by former decisions of this court, it is unnecessary to state anything further in relation to this subject.

For the errors pointed out in this opinion, the judgment of the court will be reversed and the case remanded to the district court, with direction to set aside the verdict and special findings of fact by the jury and grant a new trial.

All the Judges concurring.