EDWARD H. D. CARLOS, Respondent, v. THE MIS-SOURI PACIFIC RAILWAY CO., Appellant.

Kansas City Court of Appeals, May 16, 1904.

1. **RAILROADS: Injuring Stock: Evidence: Inference.** Inferences are to be drawn from facts proven and not from such as might have been; and where the only evidence of any cause to alarm a horse was the noise of a passing locomotive the inference may be drawn that the locomotive was the true cause of the fright.

2. **APPELLATE AND TRIAL PRACTICE: Trial Before Court: Weighing Evidence.** Where the trial is before the court without a jury, the appellate court should defer to the latter's finding since the trial court passes upon the credibility and weight of the evidence.

Appeal from Cooper Circuit Court.—*Hon. Jas. E. Hazell,* Judge.

AFFIRMED.

*Wm. S. Shirk* for appellant.

The verdict of a jury or the finding of a court, must have substantial evidence to support it, or it will be set aside. Alexander v. Railway, 37 Mo. App. 609; Wight v. Railway, 20 Mo. App. 481; Brewery v. Prodeman, 12 Mo. App. 573; O'Donnell v. Railway, 7 Mo. App. 190.

*W. M. Williams* and *W. W. Kingsbury* for respondent.

(1) Plaintiff's evidence made a prima facie case. The train was coming from the south. The horse was evidently frightened by the train and was running north. This made a case for the trier of the facts. Jackson v. Railway, 38 Mo. App. 170; Blewett v. Railway, 72 Mo. 583. (2) The trial judge saw the witnesses, observed their demeanor and conduct upon the stand, and it was his duty, sitting as a jury, to pass upon the credibility of their evidence and the weight to be given to their testimony. This court will not undertake to pass upon the weight of the evidence, or to review the finding of the court in that particular.

BROADDUS, J.—The plaintiff recovered judgment in the circuit court for $85 for an injury to his horse. Defendant appealed. Plaintiff claimed that the horse went upon defendant's right-of-way over a defective cattle guard at a point where defendant was required to fence; and that the horse being frightened by a passing locomotive and train, ran into a culvert on said right-of-way and broke his leg, rendering him valueless.

The defendant's sole contention is that the finding and judgment are not supported by the evidence.

For the sake of convenience we adopt defendant's statement of the case: The plaintiff testifying in his own behalf did not pretend that he saw the horse running from the train or that he saw him injured. When asked when and where and how the horse was injured he first answered: "Well, he was injured in the bridge caused by a train coming through about daybreak in the morning. About a quarter, something like a quarter, south of the cattle guard, south of the city of Bunceton." Plaintiff then testified further: "I saw the horse after his leg was broken, standing on the right side, west

side or southwest side of the bridge. The way I happened to go down there, I heard the alarm whistle of the train and my mother was very much alarmed and told me to get up and see if some of the horses were hurt by the train, and I did so. It was about a half an hour after I heard the alarm of the train till I went down to where the horse was. I examined the bridge or culvert near where I found the horse. I found tracks on the south side of the bridge very deeply implanted, and there was blood on the north side of the bridge. They were horse tracks. I could not tell from the tracks where the horse got in on to the railroad. His right foreleg was broken." Plaintiff then testified on cross-examination that "all indications show that he went over south to the trestle and the train got him from the south. He could walk on side of the trestle going down, that is, between the trestle and the fence. I saw the tracks on the railroad leading up from the south to the trestle work. The tracks indicated that the horse was going north. I did not see any tracks where he had gone south from the cattle guard past the trestle work. All the tracks I saw he was coming north towards the trestle work. The trestle work is ten or twelve feet in length. From the marks I saw on it it may be that the horse jumped from one end of the trestle ten or twelve feet to the other end, and it may be he did not. I could not say. I found him standing north of the trestle work on the west side of the track. He was standing some six or eight feet from the trestle, between the track and the fence. I heard the alarm whistle about daybreak and got up and dressed and went down to the track. The train passed before I got up. I did not see the horse running up the track ahead of the engine. I did not see him jump the trestle work or walk over it. *All I know in regard to it is that when we got down there I saw him standing six or eight feet from the trestle, on the left side of the track with his leg broken.* I saw Nathan Harris, the old black gentleman who lives

in Bunceton, down there. I met him right there south of the cattle guard. He said he had been down there where the horse was. He said the train woke him up." On redirect examination the plaintiff testified that from the horse's tracks being deep in the dirt he judged he was running. C. C. D. Carlos, a witness for the plaintiff testified that he was awakened by the alarm whistle of a train coming from the south and he put on his clothes and went down to the trestle or bridge and there saw where the horse went into the culvert, and found stains on the trestle; blood on the north end of the trestle looking as if it was fresh, and other appearances. "The north end of the embankment showed where the horse had toppled over and went over the embankment on the west, and I went south to the culvert twenty to forty yards, and as far as I went there were appearances of the horse running down the track between the rails, and when he got to the culvert there were evidences in the ground of a spring having been made, and immediately across the culvert, where it seemed to strike the edge of one of the cross-pieces of the culvert, a piece was knocked off. You could see part of his track on one of the cross-pieces." On cross-examination, this witness said: "I was in bed when I heard the whistle of the train. . . . The general appearances were that the horse had run down to the culvert, and the signs on the culvert indicated that the horse was hurt, and that it was freshly done. It is on the general indications that *I predicate my judgment in the matter.*"

The defendant contends that the animal might have been running on the track in mere play, or, that he might have been frightened from any number of causes other than that of a locomotive. It is not likely that in mere play the horse would have run into the trestle for it is an animal of too great sagacity to be guilty of an act of that nature. But that he may have run into the

trestle from fright other than that caused by the locomotive is true; but it would not be proper to infer so much in this case because the facts do not warrant it. There was no evidence of any alarming cause other than the noise made by the passing locomotive. We are to draw our inferences from the facts proved and not from such as might have been.

As the case was tried by the court without the intervention of a jury we are bound to defer to the finding, notwithstanding there was positive evidence going to show that the animal was not injured as plaintiff claims. It was for the judge to pass upon the credibility and the weight of the evidence.

Affirmed. All concur.