SHAW, Respondent, v. ST. LOUIS, MEMPHIS & SOUTHEASTERN RAILWAY COMPANY, Appellant.

**St. Louis Court of Appeals, February 21, 1905.**

1. **RAILROADS: Injuring Stock: Jurisdiction.** The requirement of section 3839 of the Revised Statutes of 1899, that an action against a railroad company for killing or injuring animals shall be brought in the township in which the injury happens or in an adjoining township, is jurisdictional and the fact must affirmatively appear in the record in order that the suit may be maintained.

2. ———: ———: **Evidence.** In an action against a railroad company, under section 1106, Revised Statutes of 1899, for injury to a colt caused by its being frightened by a passing train so that it ran against a fence, evidence that the colt was found injured outside the right of way fence and had been seen inside the right of way in the morning of the same day, and that there was hair on the fence wire, was insufficient to support a verdict for plaintiff in the absence of evidence that it was frightened by a train or that it ran into the fence.

Appeal from Stoddard Circuit Court.—*Hon. J. L. Fort,* Judge.

REVERSED.

*James Orchard* for appellant.

(1) The court should have sustained the defendant's demurrer to the evidence. It devolves on the plaintiff to prove that the colt came upon the railroad track at a point not enclosed by lawful fence; that it was frightened by a locomotive or a train of cars belonging to the defendant; that in consequence of such fright it ran into or against a fence or some other object (but in the case at bar it was alleged that it was

a fence), and injured, which they wholly failed to prove in this case. . Therefore, the court erred in refusing defendant's demurrer to the testimony. Perkins v. Railway, 103 Mo. 52, 15 S. W. 320; Geltz v. Railroad, 38 Mo. App. 579.    (2)    Plaintiff must allege and prove that the stock (in this case the colt) was injured in the township in which the suit was brought, or in an adjoining township. Briggs v. Railroad, 111 Mo. 175, 20 S. W. 32.

*Ford & Green* for respondent.

NORTONI, J.—Plaintiff instituted his suit before a justice of the peace for Duck Creek township, in Stoddard county, Missouri, praying damages against the defendant railroad company under section 1106, R. S. 1899, which is as follows:

"Whenever any live stock shall go in upon any railroad or its right of way, in this State, and the said railroad is not at such place or places inclosed by a good fence on both sides of said railroad, such as is by law required, and such stock, by being frightened or run by any passing locomotive or train on said railroad, shall be injured or killed by or because of having run against the fence on either side, or into any culvert, bridge, slough or mire, or other object along the line of said road, the railroad company shall pay the owner of any such stock so injured or killed the damage sustained."

Plaintiff recovered a judgment before the justice. Defendant appealed to the circuit court. In the circuit court plaintiff filed an amended petition upon which the case was tried by the court without the intervention of a jury. The amended petition alleged, among other things, that "plaintiff's said animal,

while upon and near the defendant's said road, by reason of the negligence of the defendant, as aforesaid, was frightened and run by a passing locomotive and train of cars on defendant's railroad, and was injured because of having run against a barbed-wire fence on the side of its said road on account of being frightened by a locomotive and cars aforesaid." Continuing, the petition alleges, that the colt was injured, damaged, one eye destroyed and its body and legs badly cut and gashed, etc., by the barbed-wire fence.

Plaintiff testified in his own behalf that he was the owner of the colt in question, in the fall of 1903, when it was injured; that he did not see the accident which befell the colt; that at that time the railroad company was building a barbed-wire fence, in fact, had practically completed the fence along the sides of the right of way and had turned the corner running to the railroad at the crossing of the public road, "and they hadn't put in any cattle guards. It was all closed up except there were no cattle guards on either side of the crossing. I saw the colt three days after it was injured. It had one eye out, and was cut all to pieces —its left leg was cut clear into. I think the colt was damaged $35." The colt is still living but not worth anything.

George Scott, on behalf of plaintiff, testified that he was a section foreman on the railroad and knew the colt. "I saw the colt right after it was done, I reckon, but I didn't see the accident occur. The condition of the fence—they had started to fence it, and fenced up what they intended to, but they hadn't put in any cattle guards—they had a nice fence, but they hadn't put in any cattle guards—it was closed and the crossing was closed up, but hadn't put in the cattle guards, and I suppose there was nothing to keep him from getting on the railroad track. The colt was on the outside of the enclosure when I saw it. It had the appearance of being recently cut. I noticed hair on the wire. I could

not say whether or not it was cut by the wire. It was a wire fence with four strands of wire. I passed there twice a day and felt like it was my duty to examine the colt as the other foreman wasn't present. I examined it.'' Witness describes the same injuries as did plaintiff, and estimated the damage at $25.

On cross-examination witness testified as follows: ''The colt was outside the fence when I saw it, right close to the fence.

''Q. You don't know whether or not, it ever got on the right of way? A. It was that morning.

''Q. It was that morning? A. Yes, sir.

''Q. You never saw it on the inside that evening? A. No, sir. The mare was on the inside and the colt on the outside. The fence was barbed-wire — four strands of wire.

''Q. How far apart were they? A. I couldn't say for certain— looked like might be fifteen or eighteen inches.

''Q. How big was the colt? A. It was a good sized sucking colt. There was hair on the wire but I could not tell whether or not the colt went through the fence.''

B. F. McClure testified that he knew plaintiff owned the colt. ''I don't know where it was injured at, only from what I heard. I saw it a couple of days after it was injured. The road was closed except there were no cattle guards, there was nothing to keep cattle from going on the track.

''Q. Did you see the colt on the inside of the grounds there? A. No, sir.

''Q. I will ask you if you saw any place there where it had the appearance of the colt running against the barbed-wire? A. No, sir.''

The colt was of medium size, worth about thirty-five dollars. The damages were the worth of the colt. The above excerpts set out all the material portions of the evidence.

At the conclusion of the evidence on the part of the plaintiff, defendant asked the court to declare the law to be that under the pleadings and the evidence plaintiff could not recover. This declaration of law the court declined to give. Defendant duly saved its exceptions. No further instructions or declarations of law were asked in the case on either side. The defendant declined to introduce any evidence. The trial judge, sitting as a jury, found the issues for the plaintiff and assessed his damages at thirty dollars. After unsuccessful motions for new trial and in arrest of judgment the cause comes here by appeal for review.

The question arising for decision is, allowing to the plaintiff, as a presumption, every inference that can be reasonably drawn from the testimony in his behalf, does the evidence support the finding of the court? It will be observed, first, that there is no evidence in this case that the colt was injured—in Duck Creek or an adjoining township in Stoddard county, or in any other township, so far as that is concerned; nor is there any direct evidence in the record that the colt was injured in Stoddard county, even. There is not a syllable in the record tending to show that the injury befell the colt in Duck Creek or in an adjoining township. For this reason alone, the case would be necessarily reversed and remanded.

Section 3839, Revised Statutes 1899, provides: "Any action against a railroad company for killing or injuring horses, mules, cattle or other animals, shall be brought before a justice of the peace of the township in which the injury happened or in an adjoining township." This was a jurisdictional fact and should affirmatively appear in the record. [Geltz v. Railroad, 38 Mo. App. 579; Briggs v. Railroad, 111 Mo. 168, 20 S. W. 32; King v. Railroad, 90 Mo. 520, 3 S. W. 217; Jewett v. Railroad, 38 Mo. App. 48; Backenstoe v. Railroad, 86 Mo. 492; Mitchell v. Railroad, 82 Mo. 106;

Hansberger v. Railroad, 43 Mo. 196; Haggard v. Railroad, 63 Mo. 302.]

It will be observed that there is no evidence in the record as to the colt in question being seen upon the track or right of way, or inside the right of way fence, at any time after the morning of the day it was discovered injured in the evening. There is no testimony of footprints or other evidence that the colt either walked or ran into the fence, if frightened by the train as alleged.

There is no evidence that a train or locomotive was run upon the railroad on that day or any other day, in fact, there is no evidence in this record that the railroad company ever ran a locomotive or train of cars at any time over this road or that there was so much as a handcar ever at any time passed over the road.

There was no evidence that the ringing of a bell, the sounding of a stock alarm, or the noise of a passing train was heard on that day or on any other day on the road at this point, in fact, there is no positive or direct evidence in this record that there was a railroad in operation at said point.

There is testimony that some hair was discovered on the wire fence, but this circumstance is not followed by testimony showing that the hair thus found was like or resembled that of the colt in question, nor was it explained that the hair resembled that of a horse or some other animal.

There is no evidence of blood being found on the wire.

There is no evidence in the record to disclose whether the hair found on the wire had the appearance of having come from an animal inside or outside the fence.

We feel that the circumstances relied upon for a recovery in this case are not sufficient to support the verdict. There must be some connection between the facts proved and the fact at issue. "The basis of cir-

cumstantial evidence is the known and experienced connection subsisting between the collateral facts proved, and the fact in controversy. 1 Greenleaf, Ev., sec. 11."
[Perkins v. Railroad, 103 Mo. 52, 15 S. W. 320.]

The mere fact that the colt was found injured outside the right of way, near the fence, with the additional fact that it had been seen on the right of way the morning of the day it was found injured, and that hair was found on the wire, certainly would not authorize a recovery against this defendant, in the absence of some evidence showing that a train had passed and some evidence tending to show the fright of the colt and the consequent running into the fence, which is the gist of the action. Our Supreme Court has held that to make a case under this statute, the plaintiff must show, first, that the animal went in upon the right of way at the place alleged; second, that it was frightened by a locomotive or train of cars; third, that it was injured by running against the fence. [Perkins v. Railroad, supra.]

The reading of the statute alone is all that is necessary to arrive at this conclusion. In this case the first requirement was complied with, no doubt, by having shown by the section foreman that the colt was seen inside the right of way fence that morning, but there is certainly no evidence here tending to comply with the second requirement, that it was frightened by a locomotive or train of cars for there is no evidence that a locomotive or train of cars ever at any time passed over this road. The third requirement, to-wit, that it was injured by running against a fence, was certainly not complied with merely by showing that the colt was discovered near the fence outside the right of way and that there was hair on the fence. The evidence shows that the wires were so arranged that there was a space between of fifteen or eighteen inches. It might be that the colt attempted to pass through one of these spaces without a train being within twenty miles of the injury

and thus injured itself. The railroad company could certainly not be held responsible for this. It appears that the mare was on the inside of the right of way and the colt on the outside. The colt may have wandered out from the right of way by way of the road crossing, no doubt where it came in, and later injured itself in attempting to go through the wire to join the mare inside. There is certainly nothing in this record to connect defendant in any way with this injury and to sustain the finding of fact upon such meagre and disconnected circumstances would require us to roam in the realms of conjecture and suspicion.

In Perkins v. Railroad, supra, a case under this same statute, the evidence showed that plaintiff's cow was found dead just outside the right of way with her foot entangled in the top wire of the right of way fence. Cattle tracks were found inside the right of way and two passing trains were heard to have given stock signals the day and night prior to finding the cow dead. The Supreme Court reversed the case and said: "While we might infer from this evidence that the cow was going out of the opening, and, in doing so, got entangled in the wire, it still devolved upon the plaintiff to show that she was frightened by the cars, and for that reason ran against or attempted to jump the fence." The case was reversed without remanding.

Our conclusion is that there was no evidence to support the finding in this case, hence it must be reversed. It is so ordered. All concur.