HOBBS, Respondent, v. ST. LOUIS, M. & S. RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, May 16, 1905.

1. **RAILROAD: Fences: Frightening Animals.** In order to recover against a railroad company damages for an animal killed by being frightened by a passing train, under section 1106, Revised Statutes of 1899, it is necessary for the plaintiff to prove first, that the animal went upon the right of way through some defect in the railroad fence; second, that it was frightened by a locomotive or train; third, that the death resulted from running against the fence in consequence of such fright.

2. ———: ———: ———: **Circumstances.** But it is not necessary to prove such facts by direct testimony; they may be proven by circumstances which would reasonably satisfy a fair and impartial mind that such facts existed.

Hobbs v. Railroad.

3. ———: ———: ———: ———. In an action against a railroad company for the value of a mare, under section 1106, Revised Statutes of 1899, where the evidence showed the mare was found dead entangled on the wire of the right of way fence, inside the right of way, with evidence of having been dead two or three days; that she was seen on the right of way near the place a few days before; that a train came along at the time and gave the stock signal for the space of a quarter of a mile; that the railroad was unfenced near the place where the animal was found dead; that horse tracks were seen going through that place and along the road to the point where she was found, it made out a case for the jury to say whether the necessary facts were proven.

Appeal from Cape Girardeau Court of Common Pleas. —*Hon. John A. Snider,* Judge.

AFFIRMED.

*L. F. Parker* and *Moses Whybark* for appellant.

(1) Although a party may recover on circumstantial evidence in cases under the stock statutes, yet they should make out a case where a fair presumption may be drawn from them and not a possible presumption. Hesse v. Railway, 36 Mo. App. 163. (2) What was said by Judge BLACK in the case of Perkins v. Railway, above cited is apropos to this case. If the mare was frightened while on the right of way by the train mentioned in the evidence, the employees in charge of the train could have given some evidence upon the subject, but they were not called, and the burden was upon the plaintiff to make out a prima facie case. This he did not do, and the judgment is reversed. Perkins v. Railway, 103 Mo. 59, 15 S. W. 320.

*R. H. Whitelaw* and *John A. Hope* for respondent.

(1) We think the court should take judicial notice of the fact that this mare became frightened at the unusual sight and terrifying noises caused by that mov-

ing train. Grimes v. Eddy, 126 Mo. 108, 28 S. W. 756. (2) It is well settled that the facts necessary to authorize recovery in cases like this need not be shown by direct evidence, but may be inferred from all the surrounding circumstances. Blewett v. Railroad, 72 Mo. 583; Gee v. Railroad, 80 Mo. 283; M'cBride v. Railroad, 20 Mo. App. 216; Combs v. Railroad, 58 Mo. App. 468; Bepp v. Railroad, 87 Mo. 98; Carlos v. Railroad, 80 S. W. 965.

## STATEMENT.

This suit is for the value of a two-year-old mare alleged to have come to its death because of being frightened by a passing train and running into a wire fence at the side of defendant's railroad. It is bottomed on section 1106 of the Revised Statutes of 1899.

The evidence on the part of plaintiff shows that the railroad had recently been completed and extra and work trains only were being operated thereon. The fences and cattle-guards required by law were not yet wholly constructed. The section foreman testified in substance that he was attracted by the stench from the dead animal and found the mare inside the right of way about a quarter of a mile south of Shepley Station, Cape Girardeau county, on May sixteenth. From appearances she had been dead a day and a half or two days. She was found entangled in the wires of the fence on the left-hand side of the road going south. The bottom wire of the fence was across the back of her neck and the second wire from the top was right under her throat. Her throat was cut by the wire. Her body was lying lengthwise of the fence and he observed some signs on the ground indicating a struggle. There was an opening in the fence of twelve or fourteen feet for gates at this point but no gates had yet been put in and near this point there was an opening on the fence of about two hundred feet. The fences were built up but no cat-

tle-guards and no wing fences connecting the fences with the cattle-guards, as is usual, were built at that time. Witness Hartle testified that between the 10th and 15th of May, he crossed the track about one-half mile south of Shepley Station and one-fourth of a mile south of where the animal was found dead on the sixteenth of May, and saw plaintiff's mare standing upon the track with her head toward him, in company with three others of the horse kind, which were feeding just north of her. A gravel train was coming from the south. He passed on, but observed the locomotive sounding the whistle giving the stock signal and continued to give the signal for a quarter of a mile as it ran north. Witness Ramsey testified that he was plowing in his field a few days before the mare was found dead and heard the train giving the stock signals along near the point where the mare was found buried a few days later. Plaintiff testified that he heard stock signals given by the locomotive a few days before he found his mare dead. "I heard there was a sorrel killed. Mine was gone. Ramsey's came home torn up and finally had to kill it and a mule came home tore up but it got well. We were hunting for them and this sorrel colt was missing." He testified to the opening in the fence mentioned by the section foreman and also that there was an opening at the depot. From a quarter of a mile to a half a mile south of Shepley they found horse tracks. He further testified:

"Q. Then what did you do? A. I followed the track of the colts where they had been running backward and forward across the road on the road bed until we found where the mare was buried.

"Q. You found tracks from the point where you first got on the right of way up to where the mare was buried? A. Yes, sir.

"Q. Were they tracks of these horses? A. Yes, sir; I reckon so; they were horse tracks. There was

113 app—9

four in the bunch; three of them tore up partially, one killed."

He further testified that he found his mare buried inside the right of way where the section foreman had caused her to be interred and there was dry blood still on the wire where she had been caught on the fence. The stock signals he had heard were sounded several days before he found the animal buried.

At the conclusion of the plaintiff's case, the defendant asked the court to declare the law to be that on the pleadings and the evidence the plaintiff could not recover. The court declined to so instruct. The case was submitted to the jury which returned a verdict for plaintiff for $110. Defendant appealed to this court, contending that the evidence was insufficient on behalf of plaintiff and that the court erred in declining the peremptory instruction requested by it.

NORTONI, J. (after stating the facts).—It is the adjudicated law under section 1106, R. S. 1899, under which this suit was brought, that to recover thereunder it must be shown; first, that the animal went upon the right of way at a point where the fence is defective and through such defective fence; second, that she must be frightened by the locomotive or train of cars; third, that the injury or death must result 'from running against the fence in consequence 'of such fright. The statute itself says as much. Courts have repeatedly so held. Briggs v. Ry., 110 Mo. 168; Perkins v. Ry., 103 Mo. 52, 15 S. W. 320; Shaw v. Ry., 110 Mo. App. 561.

Appellant argues that there is no evidence showing any one of these elements essential to recovery. We cannot agree with this contention. The essential elements of the case can be made out as well by circumstances as by positive proof. If the circumstances are so connected and bear such relation to the main fact in controversy as to reasonably satisfy a fair and impartial mind that the injury resulted by reason of the

mare going upon the right of way through a defective fence and that she was there frightened by the locomotive or train, and in consequence of such fright, ran into the fence, which resulted in her death, then a prima facie case is made as well on circumstances as by positive proof. [Gee v. Ry., 80 Mo. 283; Blewett v. Ry., 72 Mo. 583; Carlos v. Ry., 106 Mo. App. 574, 80 S. W. 965; Combs v. Ry., 58 Mo. App. 468; Hess v. Ry., 36 Mo. App. 163; McBride v. Railroad, 20 Mo. App. 216.]

The evidence shows conclusively that there was no fence at the station and as much as two hundred and fifty feet of the road was unfenced near the point where the animal was found dead as well as a space left for gates therein in which there were no gates. The evidence is positive that the mare and other horses were inside of the right of way and the mare standing upon the track looking south only a few days before she was discovered dead and buried. Plaintiff relates that in his search for the mare, he went upon the right of way at one of its defective places in the fence and found tracks from where he first came upon the right of way up to where the mare was buried and that he supposed they were his horse's tracks. The witness who saw the mare standing upon the track, stated that there was then coming nearby, a gravel train, going northward toward the mare; that he heard it sound the stock signal and heard the signals continue for about a quarter of a mile more and that it was about a quarter of a mile from that point to where the mare was found a few days later dead, inside the right of way, entangled in the wire fence.

Appellant may argue that it must be shown positively that the mare was frightened by its signals. Plaintiff could not well go into the senses of the mare and discover what her feelings were, whether of fear or pleasure, at the sound of the stock signals of the approaching train. Proof on this proposition is happily dispensed with by the law. Wharton in his Law on Evi-

dence, vol. 2, sec. 1295, says: "We may also assume, as a presumption of fact, that animals, as a general rule, will act in conformity with their nature. Thus, it is probable that untended cattle will stray; that horses will take fright at extraordinary noises and sights." The learned author also says in the same section that we may assume as a presumption of fact that shying horses may continue to shy; that certain kinds of dogs will worry sheep and that a cow will go through an opening in a fence instead of leaping the fence on either side of the opening. So, then, we find the law presumes that the plaintiff's horse went upon the railroad through the opening of the fence as it was seen inside the right of way and upon the track near the opening. The presumption is that it went through the defective fence and not over the lawful fence on either side of the defect. But aside from this presumption, plaintiff's testimony was to the effect that he followed tracks from the point where he went on the right of way to where he found the mare dead. The engine having sounded the stock alarm, the presumption is indulged that this mare took fright thereat as horses usually do and the continued sounding of the whistle for a quarter of a mile north is a strong circumstance tending to prove that the mare was frightened and fleeing from the train, as she was afterwards found dead, near the place where the stock alarm ceased to sound. Then, too, the evidence discloses that the other three animals with her were bruised and injured and seemed to have had the same experience or nearly so.

The Supreme Court of New Jersey has said: "It is a matter of common knowledge that horses, otherwise well broken and kind, show signs of terror at the sight of a moving vehicle drawn by an invisible motor." [Meyer v. Krauter, 24 L. R. A. 575.] It is just as appropriate to say that it is a matter of common knowledge that horses usually take fright at locomotives when sounding stock alarms. The railroads recognize this to

be true else why sound stock alarms?  It is one of the common experiences of life of which we must all take notice and govern ourselves accordingly.  "Courts will take notice of whatever ought to be generally known within the limits of their jurisdicton."  [Greenleaf on Evdence, (14 Ed.), sec. 6; Grimes v. Eddy, 126 Mo. 180, 28 S. W. 756.]  "If the fact alleged to exist and upon which the rights of parties depend, is within common experience and knowledge, it is one of which courts will take judicial notice."  [Minnesota v. Barber, 136 U. S. 313; Grimes v. Eddy, 126 Mo. 180.]

Appellant's contention that the fact the mare was found dead with her head entangled in the wire fence and her throat cut, is not sufficient to satisfy the rule of the statute that she ran against the fence, when considered together with other facts and circumstances in proof, is hardly tenable.  There could be no other reasonable theory by which she came to her death, looking to the record before us, than that she became frightened by the train and ran into the fence.  It is very improbable indeed that the mare would have gone to the fence voluntarily and endeavored to go through it by putting her head through the wires, or reaching through the wires in eating grass when the evidence shows there was grass inside and outside the right of way.  And we would necessarily presume again that the mare would go out of the right of way the way she came in rather than presume that she attempted to go through the fence and we cannot well assume that she deliberately committed suicide.  We must agree that horses have sense and some sagacity.  As was held by the Kansas City Court of Appeals in the case of Carlos v. Ry., 106 Mo. App. 577, 80 S. W. 965.  "It is not likely that in mere play the horse would have run into the trestle for it is an animal of too great sagacity to be guilty of an act of that nature. . . .  There was no evidence of any alarming cause other than the noise made by the passing locomotive.

We are to draw our inferences from the facts proved and not from such as might have been." So it is in this case. We must draw our inference from the facts proved and before us in this record and not draw them from nothingness, which would amount, when drawn, to nothing more than conjecture or suspicion. The facts proved show the mare on the railroad track, the train approaching, the sounding of the stock alarm, tracks of the horses from the point of entry on the right of way, and that plaintiff followed the tracks where they had been running backward and forward across the road on the roadbed until he found the mare where buried. The mare, when discovered, was inside and not outside of the right of way, entangled in the wire. In our opinion there was not only substantial but there was abundant evidence to send this case to the jury, and the court did not err in refusing the peremptory instruction asked.

The judgment is affirmed. All concur.