SYLVESTER H. MORRISON, Respondent, v. KANSAS CITY & WESTPORT BELT RAILWAY COMPANY AND METROPOLITAN STREET RAILWAY COMPANY, Appellants.

Kansas City Court of Appeals, March 4, 1912.

1. **LIVE STOCK: Statutory Fences: Railroads.** Plaintiff sued for damages for the killing of a mare which strayed upon defendant's tracks at a place not within an incorporated city, town or village, where there was no lawful fence, and was struck by an electric railway car. There was a fence built by the former owner of plaintiff's land which adjoined the right of way, but it was insufficient to turn stock. *Held*, that it was the duty of defendants to maintain the fences along the sides of its railway in good condition up to the standard required by the statute.

2. ———: ———: **Electric Roilroads.** The primary object of the law requiring railroads to fence their rights of way was for the security of passengers and the statute is just as applicable to electric as steam railroads.

3. ———: ———: **Instructions.** It is error to instruct the jury that it was the duty of defendants to erect and maintain good and lawful fences along the sides of their road without telling them what constituted a lawful fence.

Appeal from Jackson Circuit Court.—*Hon. John G. Park*, Judge.

Affirmed.

*John H. Lucas* and *Charles N. Sadler* for appellants.

*S. S. Gundlach* for respondent.

BROADDUS, P. J.—This suit was instituted in a justice's court where it was tried and appealed to the circuit court of the county where it was tried anew, and, the judgment being for the plaintiff, appeal was taken to this court.

The statement reads as follows: "That on or about the first part of July, 1909, plaintiff was the owner and possessor of a certain mare, to-wit, a chestnut mare, about eight years old, of the value of one hundred and fifty dollars; that said mare, casually and without the fault or procurement of plaintiff, strayed in and upon the tracks and grounds occupied by said defendant road, in said Washington township, at a point about 200 yards northwest of where defendants' said railroad track crosses the public road known as Eighty-fifth street, where said track passes through defendants' unenclosed lands, at a point where said defendants were, by law, required to erect and maintain good and lawful fences and cattle guards, along the sides of its said roads, not at a public crossing, nor within an incorporated city, town or village; that said mare strayed and went upon said tracks and ground, by reason of the failure and neglect of said

defendants to erect and maintain good and lawful fences and cattle-guards on its said road, where said mare got upon same, as aforesaid; that defendants, not regarding their duty in that respect, so ran and managed its said car, or cars, as to run the same over and against said mare, and did so maim, cripple and injure said mare that said mare had to be killed, about said date in July, 1909, to plaintiff's damage, in the sum of one hundred and fifty dollars; that by reason of section 1105, of the Revised Statutes of Missouri 1899, plaintiff is entitled to recover of the defendants double the said amount of damages, to-wit, three hundred dollars.''

The evidence shows that the road was, when originally built, a steam railroad, but afterwards converted into an electric line, known as the Kansas City & Westport Belt Railway Company. Neither of the defendant companies erected fences and cattle-guards along the right of way of the railroad, but the farmers owning the adjoining lands had erected such fences. Although the location is described by the name of a street, the fact is there was no street, but the lands adjoining were unenclosed except where fenced by the adjoining owners. The plaintiff owned and occupied five acres adjoining the railroad which had been fenced by its former owner. This fence was not a lawful fence such as to restrain stock. The evidence of both parties was to the effect that the fence was insufficient to turn stock. The evidence tended to show that plaintiff's animal escaped from his premises and got onto the railroad and was struck and so severely injured that she had to be killed. Proof was made of her value. The evidence also tended to show that at the time when plaintiff's animal was struck the railway was operated by the Metropolitan Street Railway Company. There was no evidence offered to show that the first mentioned company either owned or operated the road at that time.

The defendants each interposed a demurrer to plaintiff's evidence which the court overruled. The Belt Company stood on its demurrer. The Metropolitan introduced evidence for the purpose of showing that the animal got upon the right of way through the negligence of the plaintiff. A motorman who operated cars on the railroad was introduced by the latter company, who testified that he received pay for his services in Kansas City & Westport Belt checks at Westport avenue and Main street, Kansas City; and that the cars he operated were put in the barns of the Metropolitan Street Railway at Forty-eighth and Harrison streets. Another witness stated that he received his pay from the Belt Railroad Company; and that the cars he operated started out from the barn of the Metropolitan; and that they are repaired there.

Passing by the ingenious argument of the defendants that the plaintiff did not show that the animal of plaintiff was struck and injured by reason of the failure of defendants to erect and maintain lawful fences along the sides of the railway, it is sufficient to say, that in our opinion, that said animal would not have escaped from his premises had there been such a fence as the law required; and further, that it made no difference who erected the fence originally, it was the duty of the company operating the road to maintain it in good condition up to the standard required by the statute. Although the general allegation in plaintiff's statement that defendants did not erect such a fence as the law required made it a defective statement, it is sufficient to sustain the verdict.

It is contended that the judgment as to the Belt Company should be reversed for the reason that no evidence had been offered by plaintiff at the close of his case showing that it had any ownership of the railroad or any connection with its operation. Had

the case closed at that point the contention would be good, but the Metropolitan Company continued the controversy, and, in doing so, elicited the fact that both companies were engaged in operating the road, or to be more specific, the one was furnishing the cars for the operation and the other was paying the employees who were engaged in such operation. As we view the matter the two companies were acting jointly. In such case it is immaterial whether the stock was killed by the Metropolitan cars or those of the Belt Railway Company. [Price v. Barnard, 70 Mo. App. 175.]

It is contended that the law requiring railroads to fence their rights of way does not apply to others than steam railroads. All railroads in this state are chartered under the same provisions of the statute and all their powers are derived from such statute. It is true some of the provisions applicable to steam railroads may or may not apply to electric railroads, because the latter may deal only in passenger traffic while the former deals in both passenger and freight traffic. But the primary object of the law requiring railroads to fence their rights of way was for the security of passengers, and, as to that matter, the statute is just as applicable to the one as to the other.

Plaintiff's instruction No. 1 tells the jury that it was the duty of defendants to erect and maintain "good and lawful fences along the sides of their road where the same passes along and through cultivated land," etc., without telling them what it took to constitute a lawful fence. This was error. What constituted a lawful fence was a question of law for the court and not for the jury. But as there was no pretense that the fence was sufficient to turn stock the error was harmless.

Finding no substantial error and the judgment being for the right party the cause is affirmed. All concur.