ARTHUR WHITE, Respondent, v. SLIGO AND EASTERN RAILROAD COMPANY, Appellant.

Springfield Court of Appeals, November 14, 1914.

1. **APPELLATE PRACTICE: Verdict: Binding Effect on Appeal.** The finding of a jury, supported by any substantial evidence, is conclusive on appeal.

2. **RAILROADS: Injuries to Horse: Defective Fence: Evidence.** Action against railroad company for injuries to plaintiff's horse which strayed on defendant's right of way through a defect in a fence, action being based on Sec. 3146, R. S. 1909. Evidence considered sufficient to sustain verdict for plaintiff.

White v. Railroad.

3. ———: Fences: Defects in: Constructive Notice. Where a fence along a railroad right of way has been down for several months, the railroad company has constructive notice of such defect as a matter of law.

4. ———: ———: Instructions: Harmless Error. In an action against a railroad company for injuries to a horse which strayed on the right of way, error in an instruction requiring a different · fence than that prescribed by law is harmless where the evidence showed that the railroad company neither had a good fence as required by law nor a lawful fence as defined and required by the instructions. .

5. ———: ———: Duty to Keep Sufficient Fence. In an action against a railroad company for injuries to a horse which strayed on the right of way through a defective fence, it matters not that the fence originally came up to the standard; the company is required to keep the fence good and lawful at all times.

6. ———: ———: Reconstruction by an Abutting Owner: Instruction. An abutting property owner moved and changed, with the acquiescence of the defendant railroad company, a fence along the defendant's right of way which was originally constructed by the defendant company, the purpose being to prevent the washing away of the fence by a small creek. The fence having been rebuilt as secure and safe as it was before removal, the court properly instructed the jury that it was the duty of the defendant company to maintain and keep same in good condition.

7. RAILROADS: Fences: Defective: Landlord: Tenant: Notice of Agreement. Action by tenant of landowner whose property abutted on defendant's right of way, for injuries to his horse which strayed upon defendant's right of way through a defective fence. That there may or may not have been an express or implied contract between the landowner and defendant company exempting the company from such liability, matters not, where notice thereof was not given the tenant.

Appeal from Crawford County Circuit Court.—*Hon. L. B. Woodside, Judge.*

A.FFIRMED.

*A. H. Harrison,* for appellant.

(1) Instruction number 2 given at the instance of the plaintiff, was not a correct declaration of law under

the facts in the case; it failed to submit to the jury the question whether or not the defendant had notice of the defective condition of its fence a sufficient length of time to have repaired it; it ignored the defense of the defendant that the fence had been altered and changed by the owner of the adjoining lands; it put upon the defendant the burden of erecting and maintaining a "lawful" fence, while the statute only required a "good" fence; it was erroneous in that it submitted to the jury to find whether or not the fence, as originally constructed, was a lawful fence, in the absence of any evidence that it was not a lawful fence. Section 3146, R. S. 1909; Railroad v. Kavanaugh, 163 Mo. 54; McCallister v. Ross, 155 Mo. 94; Hax v. Railroad, 123 Mo. App. 172. (2) It devolved upon the plaintiff to prove that the mare came upon the railroad right of way at a point not enclosed by a good fence at a point on the right of way where, under the facts in this case, the defendant was required to erect and maintain such fence; that the mare was frightened by a locomotive or train of cars belonging to defendant; that in consequence of such fright the mare ran into a culvert or bridge and was injured, all of which the plaintiff wholly failed to prove in this case. Therefore the court erred in refusing the instructions, in the nature of demurrers to the evidence offered by the defendant. Perkins v. Railroad, 103 Mo. 52; Shaw v. Railroad, 110 Mo. App. 561; Yeager v. Railroad, 61 Mo. App. 594; Fritz et al. v. Railroad (Mo.) 148, S. W. l. c. 78; 1 Greenleaf, Ev. (15 Ed.), sec. 11; Geltz v. Railroad, 38 Mo. App. 579; Cathey v. Railroad, 149 Mo. App. 141; Eggleston v. Railroad, (Mo.) 164 S. W. 169.

*Harry Clyner* and *Frank Farris* for respondent.

(1) The defendant company was not only required to erect a lawful fence, but it was required to maintain it, and this obligation to maintain a lawful fence con-

tinued during the life of the railroad. Whiteman v. Railroad, 163 Mo. App. 228; Sections 3145, 3146, R. S. 1909. (2) Instruction number 2 is a clear and concise statement of the law, and is not subject to any of the objections lodged against it by appellant. If appellant wanted the question, as to whether the condition of the fence had existed a sufficient length of time for it to have had implied notice of such condition, submitted to the jury it should have requested an instruction on that question. Having asked none the court was not required to give it. Warrington v. Kallauner, 135 Mo. App. 5 (3) Respondent was not required to prove by direct and positive testimony that the mare was frightened or run by appellant's engine or train, but could establish such facts by circumstances. Brown v. Railroad, 104 Mo. App. 691; Lynn v. Railroad, 164 Mo. App. 445; Carlos v. Railroad, 106 Mo. App. 574; Hobbs v. Railroad, 113 Mo. App. 126.

STURGIS, J.—This action is under section 3146, Revised Statutes 1909, for injuries resulting in death to plaintiff's horse by reason of being frightened and run by a passing locomotive and train into an open culvert through defendant's roadbed. The fact that the animal came onto the right of way from an adjoining pasture by reason of a defective fence is hardly controverted; in fact, the defendant seeks to avoid responsibility for the condition of the fence by reason of the act of a former owner of the land moving and changing the fence from its original location and condition. The evidence shows that the animal escaped onto the right of way where the barbed wire fence was loose and flat on the ground.

It can hardly be doubted from the evidence that the animal was injured by trying to cross this open culvert. It was found on the right of way twenty-eight feet from the culvert with one leg broken below the knee and another skinned and bruised. The injured

animal was with several others, also found on the
right of way further down the track, and the culvert
showed prints of horses' tracks leading to the culvert
and on the ties over the same and signs of a horse's
foot having slipped between the ties. There were also
signs that a horse had fallen or rolled off this culvert
down on the ground, horse tracks being found there
also.

The main controversy at the trial was as to wheth-
er the animal had been injured before the train came
along and was then standing on the right of way in-
jured, or was frightened and run into the culvert by
defendant's train. This issue was sharply drawn both
in the evidence and by the instructions. The jury
found for plaintiff and, if there is any substantial evi-
dence to support that finding it is conclusive here.
Plaintiff's evidence is largely circumstantial, though
there is direct evidence that the train was whistling
near the place of the injury at the time thereof and
that the other animals, companions of the one injured,
were seen running ahead of the train, though some
distance therefrom, at a place a short distance beyond
the point of the injury. The point in dispute is whether
these animals, and particularly the one injured, were
frightened and run by the coming train before reach-
ing the culvert and before the injury, or was this one
injured before the train came along and the others
frightened and run only after the culvert was passed
both by such animals and the train. If plaintiff's evi-
dence is to be believed, the horses' tracks were con-
tinuous through the down place in the fence, up the
embankment onto the track, and down the track to the
culvert beyond. Defendant's employees running the
train say the animals were not on the track, at least in
sight, and no whistle was sounded until after the train
passed the culvert and the injured animal standing
there and that the whistle was because of the other ani-
mals further down the track. That the animals may

have been frightened or caused to run down the track over this culvert before any whistle was sounded or even before the animals were seen by the trainmen, on account of curves in the road and consequent obstructions, was a fact to be determined by the jury. Emphasis is laid on the fact that there is no evidence that this animal was "running" before and at the time it went onto this culvert. We think, however, that the statute has little reference to the speed at which an animal may be going; provided the train, by fright or otherwise, causes it to go onto a culvert, such as this, and be injured thereby. It is unnecessary for us to set out and analyse all the evidence on this point and we dispose of it by holding, after a careful reading of the same, that there is substantial evidence to sustain the verdict. [Brown v. Railroad, 104 Mo. App. 691, 78 S. W. 273; Lynn v. Railroad, 164 Mo. App. 445, 146 S. W. 451; Carlos v. Railroad, 106 Mo. App. 574, 80 S. W. 965.]

Plaintiff's instruction is criticised as ignoring the element of liability as to defendant having actual or constructive notice of the defective fence; but, the uncontradicted evidence is that the fence had been down for several months, which is constructive notice as a matter of law. [Hax v. Railroad, 123 Mo. App. 172, 177, 100 S. W. 693.]

It is immaterial to this case whether there is a difference between a "good fence . . . such as is by law required," as specified in the statute, or a "lawful" one, as required and defined by the instructions. The undisputed evidence is that defendant had neither one. [Morrison v. Railroad, 162 Mo. App. 662, 666, 145 S. W. 137.] Nor does it matter whether the fence originally came up to the standard or not. (Hax v. Railroad, 123 Mo. App. 172, 177, 100 S. W. 693), since defendant is imperatively required to keep it good and lawful at all times. In Whiteman v. Railroad, 163 Mo. App. 228, 231, 146 S. W. 97, it is said: "The obligation

White v. Railroad.

of a railroad company to fence begins with the operation of trains on the road and the obligation to maintain lawful fences enclosing the railroad continues during the life of the railroad.'' [Morrison v. Railroad, 162 Mo. App. 662, 665, 145 S. W. 137.]

Defendant seeks to excuse its liability for the defective fence by proving that some two years prior to this injury the then owner of the land, the deceased husband of the present owner, from whom she acquired it by will, had moved and changed the fence originally erected by defendant on the margin of its right of way at the place where the animals came on the same. This was done because a small creek passed from the land in question through the right of way at this point and to avoid washing and drift against the fence. The fence was there turned in on the right of way to connect with the bridge under the track. The defendant acquiesced in this change. The court instructed the jury that if in doing this the fence was constructed as safe and secure as it was before removing it, it became defendant's duty to maintain and keep it in good condition. This is good law.

Besides this, plaintiff was a tenant of the landowner and had no notice, as far as the evidence shows, of any express or implied agreement by the former landowner to exempt the defendant from this kind of liability. The railroad was therefore liable to the tenant whether it would be to the landowner or not. [Thomas v. Railroad, 82 Mo. 538; Crow v. Railroad, 23 Mo. App. 357.] Nor would such a parol agreement run with the land so as to bind the present owner. [Thomas v. Railroad, supra.]

Finding no substantial error, the judgment will be affirmed.

*Robertson, P. J.,* concurs. *Farrington, J.,* concurs.